UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BUSINESS FUNDING GROUP,

                        Appellant,

v.                                  **DECISION AND ORDER**
                                                         11-CV-565S

DOMMER CONSTRUCTION CORP.,

                        Appellee.

## I. INTRODUCTION

Appellant and creditor, Business Financial Group ("BFG"), seeks reversal of the Order of the Hon. Michael J. Kaplan, United States Bankruptcy Judge, Western District of New York, which found that appellee and debtor, Dommer Construction Corp. ("Dommer"), could offset certain debt it owed BFG.[1] In rendering his judgment, Judge Kaplan expressly disagreed with a previous New York State court decision that came to a contrary conclusion. Specifically, BFG appeals Judge Kaplan's finding that the Rooker-Feldman doctrine did not apply, allowing him to come to a different conclusion than the New York State court. For the following reasons, Judge Kaplan's Order is affirmed.

## II. BACKGROUND

The precise nature of Dommer's underlying petition in the bankruptcy court and the background explaining how Dommer became indebted to BFG are irrelevant to this action. It suffices to note that Dommer is a general contractor that became liable to BFG for loans that BFG provided to Dommer's subcontractor, MBE Group Inc. See In re Dommer Constr. Corp., No. 10-12764K, 2011 WL 832901, at *1 (W.D.N.Y. Mar. 3, 2011).

---

[1] BFG argues that Judge Kaplan's Order is final and therefore subject to appeal under Rule 8002 of the Federal Rules of Bankruptcy Procedure. To the extent that the Order is interlocutory, BFG is granted leave to appeal pursuant to Bankruptcy Rule 8003.

BFG eventually sued on this debt in New York State court. On March 29, 2010, the New York State Supreme Court, County of Erie, found Dommer liable in the amount of $438,725.17. Bus. Funding Grp., Inc. v. Dommer Constr. Corp., Index No. 2005-5161 (N.Y. Sup. Ct. Mar. 29, 2010) (unreported). Several months later, on June 22, 2010, the same court denied Dommer's motion for reconsideration and subsequently signed a judgment in BFG's favor for the aforementioned amount. (Dommer's Objection to BFG's Motion for Leave to Appeal ("Objection"), ¶ 6; Docket No. 4-11.) But before that judgment was entered at the Erie County Clerk's Office, Dommer filed for relief in the bankruptcy court under Chapter 11, thus automatically staying the entry of a final judgment. (Id., ¶ 11.) There is, therefore, no dispute that the judgment was not final and binding under New York State law. See N.Y. C.P.L.R. §§ 5017, 5018(a),(c) (McKinney 2011).

Thereafter, on July 26, 2011, Dommer filed a motion in the bankruptcy court requesting that the automatic stay be lifted to allow entry of the New York judgment, thus allowing Dommer to appeal the decision. (Objection, ¶ 11.) That motion was opposed by BFG, but the parties eventually agreed that because the judgment was not final, the bankruptcy court could review the state court decision. (Id., ¶ 13.)

Consequently, on March 3, 2011, Judge Kaplan issued an Order disagreeing with the state court as it applied to Dommer's debt and instructed BFG to amend its Proof of Claim, which was premised on the state-court decision. In re Dommer, 2011 WL 832901.

However, despite the earlier agreement and a subsequent order concerning the bankruptcy court's ability to review the state court's findings, BFG eventually reversed course, sought reconsideration of the March 3, 2011 Order, and argued that the bankruptcy court did not have subject-matter jurisdiction, pursuant to the Rooker-Feldman

doctrine, to review or alter the state court's decision as it applied to BFG's Proof of Claim in bankruptcy court.[2] (Objection, ¶ 20.) After oral argument, Judge Kaplan found that he was not barred by the doctrine and therefore denied BFG's motion for reconsideration on that ground. (Order on Motion for Reconsideration; Docket No. 3-16.)

This appeal followed.

### III. DISCUSSION

**A.   Standard of Review**

Under its appellate jurisdiction, this Court conducts a *de novo* review of the law. In re Porges, 44 F.3d 159, 162 (2d Cir. 1995); Teufel v. Schlant, No. 02-CV-81S, 2002 WL 33008689, at *4 (W.D.N.Y. Sept. 25, 2002). The facts, which would be reviewed for clear error, are undisputed. See In re Alper Holdings USA, Inc., 398 B.R. 736, 747 (S.D.N.Y. 2008)

**B.   Rooker-Feldman Doctrine**

Federal district and bankruptcy courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (internal quotations omitted). The Rooker-Feldman doctrine, named for a pair of Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), emphasizes the limited nature of this jurisdiction. Even if "otherwise [] empowered to adjudicate" a dispute, the doctrine bars all

---

[2]Such a reversal is not barred by waiver or estoppel as "[s]ubject-matter jurisdiction can never be waived or forfeited" and objections thereto "may be resurrected at any point in the litigation." Gonzalez v. Thaler, --- U.S. ---- 132 S. Ct. 641, 648, 181 L .Ed. 2d 619 (2012).

3

federal courts, except the Supreme Court, from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

There is no dispute that the bankruptcy court was "otherwise [] empowered to adjudicate" the Proof of Claim at issue there. See Id., 544 U.S. at 291. However, BFG argues that because the state court already adjudicated that very issue, the bankruptcy court was divested of its jurisdiction by operation of the Rooker-Feldman doctrine. If BFG's argument is correct, the bankruptcy court would be precluded from disagreeing with state-court's findings and BFG's Proof of Claim would remain at $438,725.17. If not, BFG must amend its Proof of Claim and "must resort to the traditional means of supporting a Proof of Claim, as if the matter had not been decided by the state court at all" in accordance with Judge Kaplan's order. In re Dommer, 2011 WL 832901, at *9.

In this Circuit, the Rooker-Feldman doctrine has been consistently interpreted to impose four conditions, each of which must be met for it to apply: (1) the party raising the claim must have lost in state court; (2) that party's injuries must be caused by the state court judgment; (3) that party's claims must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the federal court proceedings. Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

BFG argues that each of the four elements have been met in this case. But the bankruptcy court, under an admittedly narrow understanding of the second factor, found,

4

as Dommer now argues, that no injuries were "caused by" the state court's judgment. Under recent Supreme Court and Second Circuit precedent, the bankruptcy court's position is correct.

In 1983, the Supreme Court held that district courts do not have jurisdiction "over challenges to state court decisions." Feldman, 460 U.S. at 462. Under that broad understanding, it would appear that the doctrine would have barred the bankruptcy court from hearing Dommer's claim, since it amounted to a challenge to a state-court decision. However, in 2005, in Exxon Mobil Corp., the Court made it clear that the doctrine should be "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries *caused by* state-court." 554 U.S. 284 (emphasis added).

Soon thereafter, the Second Circuit had occasion to define Rooker-Feldman's reach in light of Exxon Mobil Corp. See Hoblock, 422 F.3d 77. It cautioned that the Rooker-Feldman doctrine is meant to occupy "narrow ground," and characterized the Supreme Court's holding as "paring back the Rooker-Feldman doctrine to its core." Id. at 85; see also Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (noting that before Exxon Mobil Corp., "[t]here was a time when this Circuit applied the Rooker-Feldman doctrine 'expansively,' viewing it as 'effectively coextensive with the doctrines of claim and issue preclusion'") (internal citations omitted). The Hoblock court then detailed the four requirements necessary for the doctrine to apply. Under the second requirement – the "caused by" requirement – the court noted that "an 'independent' (and therefore non-barred) claim may 'den[y] a legal conclusion' reached by the state court[,]" suggesting "that a plaintiff who seeks in federal court a result opposed to the one he achieved in state

5

court does not, for that reason alone, run afoul of Rooker–Feldman." 422 F.3d at 85 (quoting Exxon Mobil Corp., 544 U.S. at 293).

The Hoblock court then reiterated that the source of the injury must be the state-court judgment and provided an example:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment.

Hoblock, 422 F.3d at 87-88.

In accordance with the above-stated example and explanation, Dommer was not seeking relief caused by a state-court judgment because the state court's judgment, as both parties agree, had no legal effect on Dommer until it was properly filed with the Erie County Clerk. Since it was not so filed, it cannot be said that Dommer sought relief caused by the state-court's ruling because the judgment caused no legally recognizable change in Dommer's bottom line. Certainly, Dommer sought a result "opposed to the one he achieved in state court" but under Hoblock, such relief does not implicate Rooker-Feldman. The bankruptcy merely "den[ied] a legal conclusion" reached by the state court, as it was free to do under Exxon and Hoblock.

Of course, once the state action is complete, "[d]isposition of the federal action . . . would be governed by preclusion law." Exxon Mobil Corp., 544 U.S. at 293. As the court explained, "[i]n parallel litigation, a federal court may be bound to recognize the claim- and

6

issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court." Id. In other words, "Rooker-Feldman and preclusion are entirely separate doctrines." Hoblock, 422 F.3d at 85. But preclusion is inapplicable here because the preclusive effect of a state court's judgment is a matter of state law, see id., at 92-93, and there is no dispute that the state court's judgment does not have such an effect under New York law.

Accordingly, the Rooker-Feldman doctrine did not apply to the bankruptcy court's adjudication of BFG's Proof of Claim and the court properly exercised its subject-matter jurisdiction.[3]

**C.      Stern v. Marshall**

On the final pages of its reply brief, BFG, for the first time, argues that the bankruptcy court did not have "jurisdiction to hear [Dommer's] subrogation claim" pursuant to the Supreme Court's holding in Stern v. Marshall, a decision that was issued before this appeal was commenced. 131 S. Ct. 2594, 180 L. Ed. 475 (2011). This issue was never raised in the bankruptcy court.

New arguments, however, may not be made in a reply brief and this Court accordingly declines to entertain this new theory. See Ernst Haas Studio v. Palm Press, Inc., 164. F.3d 110, 112 (2d Cir. 1999).

Moreover, even if this Court were to consider this argument, it has been prematurely and insufficiently raised [4] The Court in Stern held that a bankruptcy court cannot enter a

---

[3] In an effort to argue that Judge Kaplan conducted an impermissible appeal of the state-court's ruling, BFG raises several concerns regarding the adequacy of his fact-finding process. But this issue, if it is an issue at all, is not presently before this Court.

[4] BFG's argument applying Stern to this case is limited to one paragraph.

judgment on a counterclaim that is based exclusively on a right assured by state law. But here, Judge Kaplan has not yet entered a judgment on Dommer's "subrogation claim," and, among other issues that go unaddressed by BFG, is it unclear whether BFG consented to the bankruptcy court's jurisdiction to hear Dommer's claim. See Stern,131 S. Ct. at 2621 (Scalia, J. concurring) (counting at least seven different factors, lack of consent among them, to be considered before ruling that an Article-III judge is required to adjudicate a lawsuit).

BFG's motion on this ground is therefore denied.

### IV. CONCLUSION

For the foregoing reasons, this Court affirms the Order of the bankruptcy court.

### V. ORDERS

IT HEREBY IS ORDERED, that the Order of the Bankruptcy Court, Western District of New York, is AFFIRMED.

FURTHER, that the appeal (Docket No. 1) is DENIED and DISMISSED.

FURTHER, that the Appellant's Motion to Stay is DENIED as moot.

FURTHER, that the temporary stay (Docket No. 9) is lifted.

FURTHER, that the Clerk of the Court shall take the steps necessary to close this case.

SO ORDERED.

Dated:   March 26, 2012
         Buffalo, NY

                                              /s/William M. Skretny\_\_\_
                                              WILLIAM M. SKRETNY
                                                  Chief Judge
                                         United States District Court